UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARK PICOZZI,<br><br>Plaintiff(s),<br><br>v.<br><br>CLARK COUNTY DETENTION CENTER, et al.,<br><br>Defendant(s). | Case No. 2:15-CV-816 JCM (PAL)<br><br>ORDER |

Presently before the court is Magistrate Judge Leen's report and recommendation to dismiss defendant Carr. (ECF No. 95). Plaintiff Mark Picozzi did not file an objection and the time to do so has passed.

Also before the court is defendants Shawn Judd, Brian Hightower, Joseph Daos, Valvan Goins, Timothy Phillips, Henry Coker, Eduardo Garcia, Gerald Razzo, Joanne Hans, Michael Brooks, and Lynn Jolley's (collectively "defendants") motion for summary judgment. (ECF No. 127). Plaintiff has not filed a response and the time to do so has passed.

Also before the court is plaintiff's motion not to strike medical records. (ECF No. 136). Defendants have not filed a response and the time to do so has passed.

Also before the court is plaintiff's motion to clarify missing documents. (ECF No. 137). Defendants have not filed a response and the time to do so has passed.

**I.    Facts**

Plaintiff is a prisoner in the custody of the Nevada Department of Corrections who is proceeding *pro se* and *in forma pauperis*. *See* (ECF No. 3); (ECF No. 15). This case arises from

**James C. Mahan**
**U.S. District Judge**

plaintiff's allegations, pursuant to 28 U.S.C. § 1983, regarding his treatment while he was incarcerated at the Clark County Detention Center ("CCDC").

### a. Plaintiff's allegations

Plaintiff alleges that on April 17, 2014, officers Judd and Garcia were physically assaulting another inmate. (ECF No. 14). The officers allegedly dragged the inmate to a public area so other prisoners could observe the officers as they continued to beat the inmate. (*Id.*). Plaintiff claims that while he was watching these events unfold, officers Judd and Garcia became agitated and re-directed their aggression towards plaintiff. (*Id.*). The officers purportedly slammed plaintiff's head into a concrete wall, punched and kicked him, and then rammed the stick end of a plunger into his rectum. (*Id.*). Plaintiff alleges he was subsequently unable to move for days and threw up multiple times. (*Id.*).

On April 20, 2014, plaintiff allegedly requested a nurse to inspect him because he was dizzy, throwing up, and bleeding from his rectum. (*Id.*). Just before the nurse was going to examine plaintiff, officer Hightower approached the nurse, whispered something to her, and then they both walked away, laughing. (*Id.*).

Plaintiff further alleges that he attempted to file formal grievances regarding the assault and deliberate indifference to his medical needs. (*Id.*). Officers Hightower, Suey, and Daos thwarted plaintiff's attempts by refusing to accept or respond to his forms. (*Id.*). Further, officers Hans, Brooks, Phillips, Carr, Jolley, and Coker would purportedly steal his grievance forms and prevent him from sending mail. (*Id.*). Plaintiff also alleges that he attempted to write letters to various lawyers but officer Razzo would take his correspondences, read it outside of his presence, and confiscate it. (*Id.*).

### b. Substantive record

On July 18, 2014, Dr. Rose Cordova examined plaintiff for chronic chest pain. (ECF No. 129-3). At no point did plaintiff inform Dr. Cordova about the April 2014 incident nor did he direct her attention to his alleged injuries. (*Id.*). While diagnosing plaintiff's chest pain, Dr. Cordova conducted a physical examination and did not find any indication of physical trauma. (*Id.*).

As to plaintiff's grievance forms, throughout April and May 2014, plaintiff successfully filed multiple grievances related to other incidents. (ECF Nos. 127-49, 127-50). Plaintiff provided the court with four (4) grievance forms that defendants allegedly did not accept. (ECF No. 129-35). Plaintiff claims that he hid these forms in his cell-mate's file and then gave the forms to Kristine Mautner, his private investigator. (ECF No. 127-1). However, plaintiff has also contradicted himself and admitted that he did not know Kristine Mautner at the time. (*Id*.).

Lastly, there is no evidence before the court that directly pertains to the correspondences that Razzo allegedly confiscated.

    *c. Procedural history*

On April 30, 2015, plaintiff filed the instant action. (ECF No. 1). In the amended complaint (ECF No. 14), plaintiff raised four (4) plausible claims: (1) excessive force in violation of the Eighth Amendment against Judd and Garcia; (2) deliberate indifference in violation of the Eight Amendment against Hightower; (3) denial of access to the courts in violation the Fourteenth Amendment against Hightower, Daos, Goins, Hans, Brooks, Phillips, Carr, Jolley, and Coker; and (4) interference with outgoing mail in violation of the First Amendment against Razzo. (ECF Nos. 15).

**II.    Legal Standard**

    *a. Report and recommendation*

This court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1).

Where a party fails to object, however, the court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Indeed, the Ninth Circuit has recognized that a district court is not required to review a magistrate judge's report and recommendation where no objections have been filed. *See United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir. 2003) (disregarding the standard of review

employed by the district court when reviewing a report and recommendation to which no objections were made).

    *b. Summary judgment*

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

Before the court are several issues. First, the court will adopt the magistrate judge's recommendation and dismiss defendant Carr for lack of proper service. Second, the court will grant defendants' motion for summary judgment because qualified immunity shields defendants from liability. Lastly, the court will dismiss as moot all remaining motions.

*a. Report and recommendation*

Magistrate Judge Leen recommends dismissing without prejudice defendant Carr because plaintiff failed provide sufficient information for the U.S. Marshals Service to serve defendant Carr. (ECF No. 95).

The court previously ordered now terminated defendant Clark County Detention Center ("CCDC") to file under seal all unserved defendants' personal information. (ECF No. 55). CCDC timely complied with the order and submitted the personal information of numerous officers involved in this litigation but was unable to find any record of defendant Carr. (ECF No. 59).

On April 6, 2017, the court ordered plaintiff to file a motion that provides a more detailed name or address for Carr. (ECF No. 73). Plaintiff never filed such motion, leaving the court and defendants with no means to identify Carr. Accordingly, the court will adopt the magistrate judge's recommendation and dismiss without prejudice defendant Carr.

*b. Summary judgment*

Defendants are entitled to judgment as a matter of law because they are entitled to qualified immunity, which shields them from liability.

Qualified immunity insulates public officials "'from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is broad, protecting "'all but the plainly incompetent or those who knowingly violate the law.'" *Lee v. Gregory*, 363 F.3d 931, 934 (9th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Determining whether a defendant is entitled to qualified immunity in a § 1983 action entails a two-part, conjunctive analysis exercised in the order the court deems appropriate. First, a court should consider whether the defendant's actions violated a constitutional right. *Conn v. City of Reno*, 572 F.3d 1047, 1062 (9th Cir. 2009). In making this inquiry, the court views the facts in the light most favorable to the party asserting the injury. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

Second, the court should determine whether the constitutional right was clearly established. *Conn*, 572 F.3d at 1062. A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* at 1062 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). In making this inquiry, the court should consider "the specific context of the case" and not "broad general proposition[s]." *Saucier*, 533 U.S. at 201. It is the

plaintiff's burden to show the constitutional right was clearly established. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

Here, defendants are entitled to qualified immunity because they have not violated plaintiff's constitutional rights. The court hereby addresses each alleged constitutional violation in turn.

### i. Excessive force

"When prison officials use excessive force against prisoners, they violate the inmates' Eighth Amendment right to be free from cruel and unusual punishment." *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). The core judicial inquiry is whether the officer applied force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).

In determining whether an officer uses excessive force, courts consider the "extent of the injury suffered by an inmate . . . , the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Here, plaintiff has provided the court with nothing more than his own uncorroborated self-serving testimony. Though plaintiff claims that Judd and Garcia brutally beat him and rammed the stick end of a plunger into his rectum, he has not provided any substantive evidence showing that he sustained injuries. Further, plaintiff alleges that the officers assaulted plaintiff because he saw the officers assault another inmate in a public area. However, plaintiff has not brought forth any affidavits or declarations from other inmates who would have seen the officer's alleged conduct.

Further, defendants have provided a record of plaintiff's subsequent medical examination, which indicates that plaintiff did not sustain bodily injuries. In fact, plaintiff entirely failed to tell the nurse about his alleged injuries despite receiving a physical examination. Plaintiff's allegations do not refute the medical record and cannot defeat summary judgment. *Mendiola-Martinez c. Arpaio*, 836 F.3d 1239, 1260 (9th Cir. 2016) (holding that uncorroborated self-serving testimony

cannot create a genuine dispute of fact and defeat summary judgment). Accordingly, the officers never used excessive force against plaintiff.

### ii. Deliberate indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To prove a claim for deliberate indifference, a plaintiff must establish: (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

Plaintiff alleges that Hightower prevented a nurse from treating plaintiff for the injuries that he sustained from officers Judd and Garcia's alleged assault. As the court previously discussed above, the substantive evidence before the court shows that officers Judd and Garcia did not physically assault plaintiff and that plaintiff never sustained any physical injuries. Thus, plaintiff's claim for deliberate indifference fails because there was never a "serious medical need" for Hightower to disregard. *See Jett*, 439 F.3d at 1096.

### iii. Denial of access

To state a claim for denial of access to the courts under the First Amendment, a prisoner must allege that he suffered an "actual injury," by explaining how a prison official's actions hindered plaintiff's efforts to pursue a meritorious legal claim. *See Lewis v. Casey*, 518 U.S. 343, 351–55 (1996). This right "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. 356–57

The right of access to the courts applies to prison grievance proceedings because "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system." *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir.1995), abrogated in part on other grounds by *Shaw v. Murphy*, 532 U.S. 223 (2001). A prison official's failure to process an inmate's administrative grievance may constitute unlawful denial of access when it renders the inmate

unable to timely or fully access the courts and results in actual legal injury. *Albino v. Baca*, 697 F.3d 1023, 1037 (9th Cir. 2012).

Plaintiff has not sustained an "actual injury" because he has been able to adequately litigate his claims for excessive force and deliberate indifference. *See Lewis*, 518 U.S. at 351–55. Thus, defendants have not denied plaintiff's access to the courts.

### iv. Interference with outgoing mail

Prisoners have "a First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). However, there must be a "delicate balance" between prisoners' First Amendment rights and the discretion given to prison administrators to govern the order and security of the prison. *Thornburgh v. Abbott*, 490 U.S. 401, 407–408 (1989). Prison officials have more leeway to regulate incoming than outgoing mail because of the greater security risks inherent in materials coming into a prison. *Id.* at 413.

Before the court is nothing more than plaintiff's uncorroborated, self-serving testimony that officer Razzo confiscated his letters. Accordingly, plaintiff has entirely failed to support his allegation that officer Razzo interfered with his outgoing mail. *See Celotex Corp.*, 477 U.S. at 323–24 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims").

### c. Remaining motions

Plaintiff's motions concern matters that cannot save his case from summary judgment. Accordingly, the court will deny as moot all remaining motions.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Magistrate Judge Leen's report and recommendation (ECF No. 95) be, and the same hereby is, ADOPTED in its entirety.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (ECF No. 127) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion not to strike medical records (ECF No. 136) be, and the same hereby is, DENIED as moot.

James C. Mahan
U.S. District Judge

- 9 -

1    IT IS FURTHER ORDERED that plaintiff's motion to clarify missing documents (ECF
2 No. 137) be, and the same hereby is, DENIED as moot.
3    The clerk shall enter judgment accordingly and close the case.
4    DATED September 26, 2018.

*[signature]*
UNITED STATES DISTRICT JUDGE